# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Farron Russell Creed,**

    Plaintiff,

v.

**Hartford Life and Accident Insurance Co.,**

    Defendant.

Case No. 2:19-cv-1072
JUDGE SARAH D. MORRISON
Magistrate Judge Jolson

## OPINION & ORDER

In this Employee Retirement Income Security Act denial-of-benefits case, both sides move for judgment on the administrative record. (ECF Nos. 20 and 22.) Being fully advised, the Court **DENIES** Plaintiff Farron Creed's motion (ECF No. 22) and **GRANTS** Defendant Hartford Life and Accident Insurance Company's motion (ECF No. 20).

### I. BACKGROUND

Mr. Creed worked for non-party Kenworth Truck Company as an assembly specialist. During his employment in that position, he maintained long-term disability ("LTD") insurance through Hartford (the "Plan"). The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA"), governs the Plan.

In May 2014, while covered under the Plan, Mr. Creed was involved in a motorcycle accident in which he sustained substantial injuries. He underwent numerous surgeries on his left leg and neck. He did not return to work at Kenworth after his accident. Hartford subsequently approved his claim for LTD disability benefits under the Plan pursuant to the relevant policy ("Policy") from October 16, 2014 to February 18, 2018.

1

Hartford terminated Mr. Creed's LTD benefits on February 19, 2018 after determining that Mr. Creed was no longer disabled under the policy. (ECF No. 17-5 at 565.) When reaching that determination, Hartford relied on updated medical records, video surveillance, an interview with Mr. Creed, new medical opinions and an employability study.

Dr. Taylor, Mr. Creed's neck surgeon, reported in May 2017 that Mr. Creed was "much improved" and that Mr. Creed had driven to his appointment on his motorcycle. (ECF No. 17-12 at 993.) Dr. Taylor indicated that although Mr. Creed had "4 out of 5 strength in his left bicep flexion," Mr. Creed told Taylor that he could not carry heavy objects, which limited his ability to work "given his job at UPS holding heavy boxes." *Id*.

Mr. Creed had a pain management appointment at Dr. Patel's office the next month. The nurse practitioner's notes from that session state that Mr. Creed "[c]ontinues to do well with current pain plan. Stays active and enjoys his hobbies, especially motorcycle riding. Since last visit, has completed PT for muscle strengthening." (ECF No. 17-14 at 1063.)

The doctors' reports indicating progress as well as Dr. Taylor's reference that Mr. Creed had a job at UPS triggered Hartford to re-evaluate Mr. Creed's disability status. Hartford began its review by instituting surveillance on Mr. Creed. The resultant video from September and October 2017 showed Mr. Creed driving his motorcycle and doing things that he later claimed he could not do—kneeling, bending, stooping, reaching and pulling. The video also showed Mr. Creed using his left arm in an unlimited fashion and moving his neck, arms and hands freely.

After the surveillance, Hartford interviewed Mr. Creed in-person on October 31, 2017. (ECF No. 17-8 at 795.) Hartford did not inform Mr. Creed about the surveillance. During the interview, Mr. Creed indicated that he could not return to work due to leg and neck pain sustained as a result of the accident. He also said he needed knee surgery to repair a torn

meniscus. He indicated that he could: (1) stand for one hour; (2) walk one mile; (3) shop for forty-five minutes; (4) lift up to twenty pounds; (5) sit for thirty minutes; (6) push and pull items that were not heavy; and (7) drive short distances. *Id*. at 795-820. Mr. Creed stated that he could not squat or kneel and that he could not turn his neck very well. *Id*. He indicated that he had limited use of his left hand and arm due to numbness and weakness in those areas. *Id*.

Mr. Creed visited his internist, Dr. Violette, the same day as the interview. Dr. Violette's progress notes from that encounter stated that "[p]atient presents today for routine follow-up on his chronic medical problems. Patient is doing well he denies having any acute complaints today. . . . Patient is exercising and losing weight. Patient denies having any further complaints today." (ECF No. 17-14 at 1041-42.)

Hartford forwarded the surveillance records and the transcript from Mr. Creed's interview to Dr. Violette. On January 2, 2018 Dr. Violette indicated in response that Mr. Creed could perform full-time light and sedentary work that did not involve lifting more than twenty pounds. (ECF No. 17-12 at 1010-1011.)

Hartford did the same for Dr. Taylor. (ECF No. 17-8 at 804; ECF No. 17-12 at 1012-1013). Dr. Taylor indicated on January 11, 2018 that he had not placed restrictions on Mr. Creed; however, Dr. Taylor did indicate that Mr. Creed lacked the functionality to perform largely sedentary activity for forty hours a week due to limited left-elbow flexibility that was "secondary to neural injury." (ECF No. 17-12 at 1012-1013.) Dr. Taylor further noted that he did not believe Mr. Creed could lift twenty pounds. *Id*.

Hartford then secured the evaluation of Dr. Mummaneni, an independent medical consultant board-certified in occupational medicine. (ECF No. 17-5 at 628; ECF No. 17-12 at 1015.) After a review of Mr. Creed's records, the video, the interview and the reports of Dr.

3

Violette and Dr. Taylor, Dr. Mummaneni determined that Mr. Creed was capable of working 40 hours a week with temporal restrictions regarding standing and walking as well as weight restrictions on lifting. (ECF No. 17-13 at 1019-1022; ECF No. 1705 at 628.)

Hartford forwarded Dr. Mummaneni's January 31, 2018 report to Drs. Violette, Patel and Taylor in February 2018. Dr. Violette responsed that it was difficult to assess Mr. Creed's progress because he only saw Mr. Creed once a year since Mr. Creed began treating with Dr. Patel. (ECF No. 17-13 at 1024.) Dr. Patel reviewed Dr. Mummaneni's report and concurred that Mr. Creed was able to return to work. (ECF No. 17-14 at 1037.) Dr. Taylor, however, called Hartford to discuss Mr. Creed's case after receiving Dr. Mummaneni's report. Dr. Taylor told Hartford that Mr. Creed could probably perform some type of work. (ECF No. 17-5 at 628.)

Hartford completed an employability study on February 16, 2018 based upon the restrictions set forth by Dr. Mummaneni. (ECF No. 17-8 at 826-835; ECF No. 17-9 at 836-850.) The analysis indicated that Mr. Creed could work as a mail handler, microfilm mounter, collator operator, order caller or a laboratory-sample carrier. *Id*. at 828. The report concluded that each of those occupations "exist[ed] in reasonable and sufficient numbers in the local economy and exceed[ed] the required earning potential of" $14.61/hour.[1] *Id*.

Based upon the medical records, medical opinions, surveillance, interview and employability study, Hartford notified Mr. Creed in a February 18, 2018 letter that he was "not continuously unable to engage in any occupation" such that he failed to meet the Policy's definition of disabled. (ECF No. 17-5 at 570.) The letter therefore stated that Mr. Creed's LTD disability benefits were terminated effective February 20, 2018. *Id*. at 565.

---

[1] That amount met or exceeded Mr. Creed's gross LTD income.

Mr. Creed appealed. Hartford then obtained additional medical records from Dr. Patel for the period including February 13, 2017 through April 12, 2018. (ECF No. 17-5 at 587.) Next, Hartford turned to Dr. Jamie Lewis, a board-certified physician in physical medicine and rehabilitation, for another independent medical review in October 2018. (ECF No. 17-15 at 1086-94.) Dr. Lewis reviewed Mr. Creed's records from 2014 through April of 2018. Dr. Lewis also contacted Dr. Violette, Dr. Patel, and Dr. Taylor before concurring with Dr. Mummaneni's finding that Mr. Creed could work a forty-hour workweek.[2] Dr. Lewis suggested that Mr. Creed could do so if, *inter alia*, lifting and carrying was limited to "20 pounds occasionally—up to 1/3 of the day and 10 pounds frequently—1/3 to 2/3 of the day." *Id*. at 1092.

Hartford commissioned a second employability analysis based on Dr. Lewis' restrictions. *Id*. at 1095. That second study concluded that Mr. Creed could work as an assembler, laboratory sample carrier or an order caller, as each of those professions were adaptable to Mr. Creed's restrictions and had an estimated earnings potential of $2532.01 a month.[3] *Id*. at 1096. Accordingly, on October 16, 2018, Hartford affirmed its decision terminating benefits. (ECF No. 17-5 at 587-92.) This suit followed in February 2019.

## II. STANDARD OF REVIEW

Mr. Creed's Complaint asserts a claim for benefits under § 502 of ERISA, 29 U.S.C. § 1132.[4] (ECF No. 10.) This Court's review is limited to the administrative record of the benefit determination. *Evans v. UnumProvident Corp*., 434 F.3d 866, 875 (6th Cir. 2006).

---

[2] Dr. Violette offered no substantive response. (ECF No. 17-5 at 589.) Dr. Taylor did not return Dr. Lewis' calls. *Id*. Dr. Patel did not have anything to add. *Id*.

[3] See f.n. 1 *supra*.

[4] Section 502(a)(1)(B) of ERISA gives Mr. Creed the right, as a benefit plan participant, to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In this instance, the parties agree that the arbitrary and capricious standard of review applies. (ECF No. 18.) This is "the least demanding form of judicial review." *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). "An outcome is not arbitrary or capricious where the evidence supports a reasoned explanation for that particular outcome." *Kirkham v. Prudential Ins. Co. of Am.*, No. 1:09-cv-733, 2011 U.S. Dist. LEXIS 53690, at *9 (S.D. Ohio Mar. 11, 2011)[5] (citing *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)).

Arbitrary and capricious review is deferential, but it "is no mere formality." *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006). For certain, such review serves not to simply "rubber stamp [the] decision." *Id*. Instead, the Court must consider "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.*

Mr. Creed maintains the burden of proof of presenting evidence showing that he is disabled from performing any occupation for which he was reasonably qualified by education, training or experience. *Rose v. Hartford Fin. Servs. Grp.*, 268 F. App'x 444, 452 (6th Cir. 2008) (citing *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 F. App'x 511, 516 n.4 (6th Cir. 2006) (noting that the plaintiff bears the burden of proof in an ERISA benefits case)). He does not sustain that burden here.

### III. ANALYSIS

Mr. Creed asserts reinstatement of disability benefits is required for two reasons. First, because the information upon which Hartford relies to determine that he is not disabled under the Policy is either flawed or irrelevant. (ECF No. 23 at 4-8.) Second, because the employability studies' suggested occupations are located too far from his home. *Id*. at 8-9. Hartford, in turn,

---

[5] Adopted at 2011 U.S. Dist. LEXIS 53459 (S.D. Ohio May 18, 2011.)

argues that its determination must be upheld because the information within the record clearly establishes that Mr. Creed is not disabled under the Policy's definition. (ECF No. 21 at 14; ECF No. 24 at 2.) Because the evidence supports a reasoned explanation for Hartford's decision, the Court **DENIES** Mr. Creed's motion (ECF No. 22) and **GRANTS** Hartford's motion (ECF No. 20).

### A. The evidence supports a reasoned explanation for Hartford's determination.

Mr. Creed does not proffer any evidence of his own within the administrative record showing that he is disabled from performing any occupation for which he is reasonably qualified by education, training or experience. Rather, he simply labels Hartford's evidence irrelevant or insufficient. He thus fails to carry his burden.

#### 1. Doctors' Opinions

The record contains statements from three of Mr. Creed's doctors and two independent, non-treating physicians that Mr. Creed is capable of working, albeit with restrictions. Mr. Creed attacks each opinion but fails to provide any contrasting medical evidence.

To begin, Dr. Violette, Mr. Creed's internist, indicated in January 2018 that Mr. Creed was capable of performing full-time light and sedentary work that did not involve lifting more than twenty pounds. (ECF No. 17-12 at 1010-1011.) Mr. Creed retorts that Dr. Violette "mainly" treated Mr. Creed for testosterone deficiency. (ECF No. 23 at 5.) However, Mr. Creed himself identified Dr. Violette as his internist for his appeal. (ECF No. 17-17 at 1213.) Moreover, at the time of his noted determination, Dr. Violette expressed no concern about his ability to opine on Mr. Creed's functionality for performing work. (ECF No. 17-12 at 1010-1011.) And while Dr. Violette subsequently indicated that Mr. Creed "primarily sees his pain specialist" Dr. Patel such that Dr. Violette later found it difficult to assess Mr. Creed's functional capacity, Dr. Violette

had treated Mr. Creed since at least November 2014 and was familiar with Mr. Creed's medical history. *See* ECF No. 17-9 at 878.

Hartford obtained Dr. Patel's opinion because Dr. Violette indicated that Dr. Patel was Mr. Creed's primary source of medical care. Dr. Patel, like Dr. Violette, concluded that Mr. Creed was capable of working. (ECF No. 17-14 at 1037.) Mr. Creed discounted Dr. Patel's view on the ground that Dr. Patel focused his practice on hospice and palliative pain management. (ECF No. 23 at 6.) Assuming that characterization of Dr. Patel's practice to be true still fails to call into question Dr. Patel's qualifications to opine on Mr. Creed's ability to work. Pain is necessarily a component of the work-function analysis; Dr. Patel practiced pain management and medically managed Mr. Creed's pain resulting from his injuries. Dr. Patel's purported specialization in hospice care does not undermine his qualifications to practice pain management on those not suffering from terminal illnesses.

Mr. Creed takes a similar line of attack with respect to Dr. Taylor, who had performed neck surgery on Mr. Creed. Specifically, Mr. Creed maintains that Dr. Taylor's opinion that Mr. Creed could work in positions involving lifting no greater than twenty pounds should be afforded little weight because Dr. Taylor could not opine on other limitations. (ECF No. 23 at 6.) Yet, Dr. Taylor was specifically opining on Mr. Creed's arm pain, which Dr. Taylor directly attributed to Mr. Creed's neck problems. The Court therefore finds Mr. Creed's argument on this point unpersuasive.

Mr. Creed next focuses on the independent medical reviews of Dr. Mummaneni and Dr. Lewis. According to Mr. Creed, those opinions are of no weight because neither doctor physically examined him. (ECF No. 23 at 7.) But even if the Court removes those opinions from the analysis, the Court is still left with the opinion of Mr. Creed's three treating physicians that

8

he is capable of working. However, the Court may consider the opinions of non-treating physicians; the Sixth Circuit directs that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc*., 409 F.3d 286, 296 (6th Cir. 2005). Rather, Hartford's decision to utilize a file review "is a factor to be considered in reviewing the propriety of" Hartford's benefits determination. *Evans v. UNUMProvident Corp*., 434 F.3d 866, 877 (6th Cir. 2006). And, because three treating physicians indicate that Mr. Creed can work, the Court finds no fault with Hartford's seeking medical reviews in lieu of a physical examination in this instance.

In summary, Mr. Creed disagrees with the opinions of Drs. Taylor, Violette, Patel, Mummaneni and Lewis as to his ability to work. He does not point any evidence to contradict those opinions. Thus, because of the quality and quantity of the medical evidence provided by Hartford, and the lack of conflicting evidence from Mr. Creed, the Court concludes that the medical opinions formed a reasoned basis for Hartford's decision to terminate LTD benefits. That decision was not arbitrary or capricious.

### 2. Interview

Mr. Creed asserts that his interview bolsters his argument that he is incapable of working. (ECF No. 23 at 6-7.) In support, he lists items from the interview's summary and then concludes "[e]verything in the interview supports that [he] is disabled from performing any occupation." *Id*. at 7. Merely citing to the record without making any effort to explain how or why the cited portion aids his argument is insufficient. In addition, whether the interview indicates a complete inability to work seems to be an issue for an appropriate professional to opine on, but Mr. Creed provides no such evidence supporting his view. Moreover, the interview cannot be read in a vacuum because Hartford based its determination on Mr. Creed's medical records and

9

surveillance as well as on the doctors' opinions and the employability analyses. (ECF No. 17-5 at 566-67, 587, 591.) Consequently, this argument fails.

### 3. Surveillance

The surveillance footage depicts Mr. Creed doing things he said he could not do. Mr. Creed attempts to minimize this impact by asserting that "[j]ust because [he] can be active for a short while does not suggest that he can work 40 hours per week." (ECF No. 23 at 7.) While true, this argument misses the mark. "While Plaintiff is correct that this evidence does not prove that he can work a 40-hour work week, it does refute several of his claimed limitations." *Lingo v. Hartford Life & Accident Ins. Co.*, No. 1:09-CV-867, 2011 U.S. Dist. LEXIS 91009, at *17 (S.D. Ohio Aug. 16, 2011) (citing *Rose v. Hartford Fin. Servs. Group*, 268 Fed. App'x 444, 452 (6th Cir. 2008) ("Continental was not required to ignore the inconsistencies between Rose's assessment of her level of activity and the videotape of her activities.") (internal quotation marks omitted)).

Part of the basis for Hartford's decision to terminate benefits is the video showing Mr. Creed having more functionality than he claimed possible. But Hartford's decision also considered Mr. Creed's medical records, the doctors' opinions, the interview, and the employability reports. (ECF No. 17-5 at 566-67, 587, 591.)

Five doctors, three of whom personally treated Mr. Creed, agree that he can work with some limitations. The surveillance shows Mr. Creed moving in ways that he claimed he could not. The evidence supports a reasoned explanation for Hartford's decision to terminate Mr. Creed's LTD benefits. Hartford's determination was not arbitrary or capricious.

### B. Employment Studies

Under the Policy, Hartford had to identify "any occupation for which [Mr. Creed] was qualified by his education, training or experience." (ECF No. 17-1 at 236.) Hartford did so. Mr. Creed contends that Hartford's employment analyses are flawed because they were not authored by outside vocational experts and because they suggest job availability in locations too far from his residence. (ECF No. 23 at 7.) Hartford counters that it was not required to engage vocational experts or to locate a job for Mr. Creed in his hometown. (ECF No. 24 at 10-12.) Hartford is correct on both fronts.

The Sixth Circuit does not require plan administrators to obtain vocational reports when making disability determinations for LTD benefits. *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 661-62 (6th Cir. 2013) (citing *Douglas v. Gen. Dynamics Long Term Disability Plan*, 43 F. App'x 864, 870 (6th Cir. 2002) (holding that the plan administrator was not required to offer testimony from a vocational expert as to the types of jobs plaintiff could perform given his disabilities before the plan administrator could deny his claim for long-term disability benefits); *see also Burge v. Republic Engineered Prods., Inc.*, 432 F. App'x 539, 550 (6th Cir. 2011) ("Republic was also not required to consider vocational evidence, as opposed to medical evidence, in analyzing Burge's claim.") (citation omitted).

Mr. Creed says the three careers Hartford identified within the studies are too far from his home and therefore ignore his self-described restriction of driving no more than thirty minutes. Yet, no doctor put driving restrictions on Mr. Creed. Furthermore, "[i]t is clear that a claimant's commute to a particular job site is not a consideration for determining disability." *Nelson v. Unum Life Ins. Co. of Am.*, 421 F. Supp. 2d 558, 568 (E.D.N.Y. 2006), aff'd, 232 F. App'x 23 (2d Cir. 2007) (citing *Adams v. Prudential Ins. Co. of Am.*, 280 F.Supp.2d 731, 739 (N.D. Ohio

2003) (reversing decision to terminate long-term disability benefits on other grounds, but noting that "[t]he Court is unpersuaded by Adams' argument that his inability to travel to and from work is a material and substantial duty that Defendant must consider."). Under *Nelson* and *Adams*, then, Mr. Creed's final ground for reversal fails.

## IV. CONCLUSION

For the reasons discussed above, Defendant Hartford Life and Accident Insurance Company's Motion for Judgment on the Administrative Record (ECF No. 20) is well-taken and is **GRANTED**. Plaintiff Farron Creed's Motion for Judgment on the Administrative Record (ECF No. 22) is **DENIED**.

The Complaint is **DISMISSED WITH PREJUDICE**. **THIS CASE IS CLOSED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**